# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:11CR106 |
| Plaintiff, ) | |
| ) | ORDER and |
| vs. ) | |
| ) | FINDINGS AND |
| JOHN MASS, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motions filed by defendant John Mass (Mass) to dismiss ([Filing No. 42](#)), to sever ([Filing No 44](#)) and to suppress ([Filing No. 46](#)). Mass is charged in the Indictment ([Filing No. 29](#)) along with co-defendant Sarah Penney (Penney) with tampering with a witness (Count I) in violation of 18 U.S.C. § 1512(a)(2)(A), and brandishing a firearm during a crime of violence (Count II) in violation of 18 U.S.C. § 924(c). Mass is charged in Count III and Penney charged in Count IV with the possession a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g).

Mass seeks to dismiss Counts I, II and III for a lack of proper venue. Mass seeks to sever his trial on Counts I and II from that of his co-defendant Penney. Mass seeks to suppress evidence seized from a search of a residence at 1616 Spring Street, Omaha, Nebraska, on April 1, 2011, by the Metro Area Fugitive Task Force.

An evidentiary hearing was held on Mass' motions on July 20, 2011. Mass was present for the hearing along with his counsel, James K. McGough. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. During the hearing, the court heard the testimony of Omaha Police Department (OPD) Officers Wayne M. Lovett (Officer Lovett), Mary T. Synowiecki (Officer Synowiecki), and Jeffrey Gassaway (Officer Gassaway). The court received the following exhibits: a copy of the Douglas County Corrections (DCC) Inmate Handbook (Exhibit 1); a DCC Clothing Property receipt (Exhibit 2); a DCC Personal Property Receipt (Exhibit 3); a copy of a DCC Phone Sign (Exhibit 4); a Photograph of a Basement Room (Exhibit 5); a Photograph of a Desk (Exhibit 6); a Photograph of a Vest With Hand Gun (Exhibit 7); and a Photograph of a Hand Gun (Exhibit 8). The parties were directed to arrive at a stipulation of the facts if possible, or request a supplemental hearing, concerning the change of venue issue and the severance issue. The stipulation was to include copies

of any statements of Penney and any suggested redactions for the purpose of trial. The parties were given until August 8, 2011, in order to accomplish those tasks. A transcript (TR.) of the hearing was prepared and filed on July 28, 2011 ([Filing No. 76](#)). The court provided both parties with an August 12, 2011, deadline to supplement the record and request further evidentiary hearings (TR. 85). Stipulations were filed (Filing Nos. [78](#) and [79](#)), however, neither party requested a further evidentiary hearing and these matters were deem submitted on August 12, 2011.

## FINDINGS OF FACT

On April 1, 2011, Officer Gassaway, accompanied by Officer Synowiecki and other officers, arrived at the residence at 1616 Spring Street in Omaha, Nebraska, to execute an arrest warrant for Mass (TR. 17, 40-41). The residence is the home of record for Mass (TR. 41). Prior to arriving at the residence, Officer Gassaway spoke with Special Agent Clay Nolte (SA Nolte) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) who informed him Mass was being accused of a felony assault involving a large caliber handgun (TR. 61-62). SA Nolte also informed Officer Gassaway that Sarah Penney (Penney), who was accused of committing the assault with Mass, could possibly be inside the residence (TR. 42, 64-65). Officer Gassaway held a briefing with the other officers and relayed this information (TR. 63).

Once at the residence, the officers sat in surveillance positions around the residence until Mass got home (TR. 42). Mass arrived on a mini motor bike and pulled into the garage (TR. 42). The officers then moved in and took him into custody (TR. 43). Mass was handcuffed and placed in an unmarked vehicle near the front of the residence (TR. 17-18, 29, 43). While Mass was being escorted into the vehicle, his mother, Charlotte Gibson (Gibson) emerged from a side door of the residence and asked officers what was happening (TR. 19, 44-45). Initially, Officer Travis Jaryzyka (Officer Jaryzyka) of the Council Bluffs Police Department addressed her, though shortly after, Officer Gassaway stepped in due to the residence being under Omaha's jurisdiction (TR. 46-47). Officer Gassaway began by explaining the circumstances of Mass' arrest and they had reason to believe Penney could be in the basement of the residence (TR. 47). Officer Gassaway asked Gibson for permission

to search the basement area of the house to look for Penney (TR. 47-48). Gibson was hesitant to consent to a search (TR. 48).

While the conversation between Gibson and Officer Gassaway was taking place near the side door of the residence, Mass was yelling from the vehicle at Gibson not to allow the officers to enter the residence (TR. 19, 30, 34, 36, 48, 51-52, 63). Officers near the residence were able to hear Mass yelling (TR. 36, 51). Officer Synowiecki testified at the evidentiary hearing she heard Mass scream "no" multiple times (TR. 19). Officer Gassaway testified he heard Mass yell "don't let him in, don't let him in" (TR. 51). Gibson acknowledged Mass' yelling and told Officer Gassaway that Mass must not want her to let the officers in for a reason (TR. 48). Officer Gassaway responded that the officers were just looking for Penney and then would leave (TR. 48-49). Gibson then granted the officers permission and escorted them into the basement (TR. 49).

The basement was compartmentalized with make-shift walls, curtains, and bookcases dividing the rooms (TR. 53). The lights were off so the officers entered with flashlights (TR. 72). Officer Gassaway walked around Gibson through a laundry room and then into a living area searching the places a person could hide (TR. 53). The living area contained a bed and two desks (TR. 53; Ex. 5). One of the desks was a piece of solid wood on top of two speaker boxes with an estimated two and a half feet of space underneath (TR. 54, 60; Ex. 6). During the search, Officer Gassaway looked under the desk in the space between the two speaker boxes and saw a black tactical vest with a handgun protruding from it resting on top of a box (TR. 54; Ex. 7). Officer Gassaway informed Gibson the officers would have to take the handgun because it was possibly used in a crime (TR. 54). The officers then photographed the area (Ex. 5-8).

In addition, the plaintiff and defendant stipulate the following facts:

1. On March 27, 2011, Defendants John Mass and Sara [sic] Penney arrived at the residence of Justin Nuzum and Zach Powers, located at 721 North 8th Street, Apartment No. 2, in Council Bluffs, Iowa;
2. The Government alleges that Defendant John Mass physically assaulted Zach Powers;
3. The Government alleges that Defendant John Mass assaulted Zach Powers because Zach Powers was a cooperating individual in a case against Brian Trotter (a.k.a. "Insane"), that resulted in the arrest of Brian Trotter;

4. The Government alleges that during the assault of Zach Powers, in Council Bluffs, Iowa, Defendant John Mass possessed and brandished a firearm.
5. On March 31, 2011, at approximately 12:05 p.m., Special Agent Clay Nolte and Omaha Police Officer Paul Milone had an ATF Cooperating Individual (CI) place a recorded telephone call to Defendant Sarah Penney at (402) 812-6330. Attached hereto, incorporated herein by reference and marked Defendant's Exhibit 110, is a true and accurate copy of the recorded phone call from the CI to Defendant Sarah Penney;
6. Defendant was arrested at his residence, located at 1616 Spring Street, in Omaha, Nebraska on April 1, 2011;
7. On April 1, 2011, Defendant Sarah Penney was arrested in Pottawattamie County, Iowa;
8. On April 1, 2011, at approximately 1:00 p.m., Defendant Sarah Penney gave a post-*Miranda* statement at the Douglas County Department of Corrections. Attached hereto, incorporated herein by reference, and marked Defendant's Exhibit 111, is a true an [sic] accurate copy of the recorded statement made by Defendant Sarah Penney on April 1, 2011; and
9. On April 12, 2011, Defendant Sarah Penney made a phone call from the Douglas County Department of Corrections to her mother and father. Attached hereto, incorporated by reference, and marked Defendant's Exhibit 112, is a true and accurate copy of the phone conversation made by Defendant Sarah Penney on April 12, 2011.

(Filing No. 79 - Stipulation).

## LEGAL ANALYSIS

### I. Motion to Sever

Mass moves to sever his trial from that of Penney on the basis of Penney's post- arrest statements, some which were intercepted from jail telephone conversations with parties other than Mass (Exhibits 111 and 112), and one given to law enforcement officers after Penney waived her *Miranda* rights. Mass asserts the admission of such statements would be unfairly prejudicial to him in a joint trial.

In *Zafiro v. United States*, 506 U.S. 534 (1993), the Supreme Court stated:

> [W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a

defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. [Citation omitted.] Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. **See *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968)**. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. **See, e.g., *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1979) (per curiam)**. The risk of prejudice will vary with the facts in each case . . . . When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in ***Richardson v. Marsh***, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. **See** 481 U.S. at 211, 107 S.Ct. at 1700.

*Zafiro*, 506 U.S. at 539; **see also *United States v. Pou*, 953 F.2d 363, 368 (8th Cir. 1992)**. There is a preference in the federal system for joint trials of defendants who are indicted together as joint trials play a vital role in the criminal justice system. *Zafiro*, 506 U.S. at 537. "The prerequisites for joinder are liberally construed in favor of joinder." *United States v. Rimell*, 21 F.3d 281, 288 (8th Cir. 1994). Joint trials promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987). The Eighth Circuit has held that "[r]arely, if ever, will it be improper for co-conspirators to be tried together." *United States v. Jackson*, 64 F.3d 1213, 1217 (8th Cir. 1995); **see** *United States v. Warfield*, 97 F.3d 1014, 1018 (8th Cir. 1996). While no conspiracy is charged per se in this case, it is clear that the government alleges a concert of action by Mass and Penney, and no conspiracy need be charged in order to try the defendants in a joint trial.

In *United States v. Lewis*, 557 F.3d 601 (8th Cir. 2009), the Eighth Circuit stated:

> When defendants are properly joined, "there is a strong presumption for their joint trial, as it 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" *United States Flores*, 362 F.3d 1030, 1039 (8th Cir 2004) (**quoting** *United States v. Darden*, 70 F.3d 1507, 1528 (8th Cir. 1995)). This presumption can only be

5

overcome if the prejudice is "severe or compelling." *United States v. Crumley*, 528 F.3d 1053, 1063 (8th Cir. 2008). *Lewis*, 557 F.3d at 609.

The government does have a problem with some of its evidence. The court has reviewed Exhibits 110, 111, and 112. Exhibits 110 and 112 are recordings of intercepted telephone calls Penney made from jail after her arrest. The government asserts that redactions can be made in the exhibits, if such are needed, and appropriate limiting instructions could be given to the jury which would make the exhibits admissible in a joint trial. The court agrees as to those telephone calls. However, the court finds that the post- arrest statement, Exhibit 111, is not amenable to redaction which would warrant its admission in a joint trial. Under **Bruton**, the admission of even a severely redacted copy of the admissions by Penney would be unfairly prejudicial to Mass, both from an evidentiary standpoint and from a confrontational standpoint under the U.S. Constitution. Should the government insist upon the admission of the Penney post-arrest statement to law enforcement, the trial of Mass and Penney should be severed. Otherwise, the court finds the motion to sever the trials should be denied.

## II.     Motion to Dismiss

Mass seeks to dismiss Counts I-III of the Indictment (Filing No. 26) for lack of proper venue. Mass contends the government has not shown the evidence to support the allegation the defendant intended or attempted to influence, prevent, or delay testimony from the alleged victim in Count I. Further, he argues the offenses charged in Count II and Count III of the Indictment occurred in the Southern District of Iowa. In response, the government asserts it is for the jury to decide whether the evidence supports the allegation. Further, the government argues Counts II and III are attached to the underlying offense of witness tampering, a continuous offense, and therefore only ended once Mass was arrested in Nebraska.

### Count I

Count I charges Mass and Penney with a violation of 18 U.S.C. § 1512. While proper venue is required by Article III, § 2 of the United States Constitution and by the Sixth

Amendment, as well as Rule 18 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 1512(i) states, a prosecution "may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." *United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006). Thus, venue is proper in any district in which the official proceeding was intended to be affected. *United States v. Granados*, 117 F.3d 1089, 1091 (8th Cir. 1997) (**citing** *United States v. Bascope-Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995)). Rule 18 provides that the prosecution shall be had in a district in which the offense was committed, but Congress has further provided that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *Granados*, 117 F.3d at 1091. Whether Mass intended or attempted to influence, prevent, or delay testimony from the alleged victim is a matter left to the proof at trial. The motion to dismiss for lack of proper venue in regards to Count I of the Indictment should be denied.

**Count II**

In Count II, Mass and Penney are charged with brandishing a firearm during the commission of the offense of violence set forth in Count I of the Indictment. Having found proper venue for Count I as set forth above, the prosecution for the brandishing of a firearm in violation of 18 U.S.C. § 924(c) is proper in any district where the crime of violence was committed. *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999); *United States v. Cuervo*, 354 F.3d 969, 991 (8th Cir. 1994), vac'd on other grounds sub nom. *Norman v. United States*, 543 U.S. 1099 (2005). Venue for Count II is properly alleged in the Indictment. The motion to dismiss Count II should be denied.

**Count III**

In Count III, Mass is charged with possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g). It is clearly alleged a firearm was used in the offense set forth in Count I. Furthermore, where Mass may have possessed such a firearm must be left to the trial of the merits and appropriate instructions to the jury regarding the

proof presented at trial. "There is no authority under Rule 12, however, to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue." *United States v. Brown*, 481 F.2d 1035, 1041 (8th Cir. 1973); **see** *United States v. Knox*, 396 U.S. 77, 83 n.7 (1969). Such a factual dispute is present in the instant case and the motion to dismiss should be denied.

### III. Motion to Suppress
#### A. Firearm found through search of residence

Mass seeks to suppress the firearm found through the warrantless search of his residence. He contends he was objecting to the search when the police obtained consent from his mother, Gibson. Mass further argues the boundaries of the search exceeded the scope of Gibson's consent, because the gun was found in an area where a person could not hide. In contrast, the government first contends Mass did not object to the search nor deny consent directly to the officers. Secondly, the government argues the handgun was found in the area underneath the desk, an area where a person could hide.

The Fourth Amendment prohibits "unreasonable searches and seizures" and assures "the right of the people to be secure in their persons, houses, papers, and effects." U.S. Const. amend. IV. "[T]o search a private place, person, or effect, law enforcement must obtain from a judicial officer a search warrant supported by probable cause." *United States v. McMullin*, 576 F.3d 810, 814 (8th Cir. 2009). "Although a warrantless search presumptively violates the Fourth Amendment, voluntary consent to search is a well-recognized exception to the warrant requirement." *United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010). Further, "a warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of 'unreasonable searches and seizures' if the officers have obtained the consent of a third party who possesses common authority over the premises." *United States v. Brewer*, 588 F.3d 1165, 1169 (8th Cir. 2009). While a co-resident can consent to a search, "a warrantless search of a shared dwelling for evidence **over the express refusal of consent by a physically present resident** cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *United States v. Hudspeth*, 518 F.3d 954, 959 (8th Cir. 2008) (**citing** *Georgia v. Randolph*, 547 U.S. 103, 120 (2006)) (emphasis added).

In this case, Mass, while handcuffed in the back of a police vehicle, was yelling at Gibson not to let the officers inside the residence. The officers heard his objections and Gibson even made light of it to Officer Gassaway. The government argues that in order to have objected to the search, Mass had to have interacted with police directly, to come forward and say "no you cannot search," which he did not do. The court rejects that argument. "[T]he standard for measuring the scope of a person's consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *McMullin*, 576 F.3d at 815. The court "examine[s] the totality of the circumstances, which includes the language of a person's consent and his actions during the officers' search." *Id.* (alteration added). While in the present case Mass did not interact with the officers directly, an objectively reasonable person would understand Mass yelling at his mother not to let the officers inside to mean Mass is objecting to the search. Mass was physically present, expressly refusing consent. The court therefore finds the search to be a violation of the Fourth Amendment, and the contents of the search should be suppressed.

Assuming, *arguendo,* the search of the residence was permissible, the firearm was found in plain sight in an area where a person could conceivably be hidden and would not be subject to suppression. The officers received consent from Mass' mother to search inside the house for another suspect. The testimony is clear that officers reasonably believed a person could hide themselves in the location (Exhibit 6) where the firearm was observed protruding from a protective vest (Exhibit 7). "Under the plain-view exception, officers may seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010) (**citing** *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). "Observing objects in plain view violates no reasonable expectation of privacy, which obviates the need for a search warrant." *United States v. Banks*, 514 F.3d 769, 773 (8th Cir. 2008).

### B. Phone calls made from jail

In addition to the firearm, Mass seeks to suppress statements made on a jail house phone while he was incarcerated. He asserts he had a reasonable expectation of privacy

during these phone calls and he did not intend to expose them to the public. In response, the government asserts Mass knew the phone calls made from jail were being monitored, therefore he had no expectation of privacy.

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521, generally prohibits the recording of oral or wire communications without a warrant and prohibits admission of such recordings into evidence unless a specific exception to the Act applies." *United States v. Horr*, 963 F.2d 1124, 1125-26 (8th Cir. 1992). However, "it is not unlawful for law enforcement officials 'to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception.'" *Id.* at 1126 (**quoting** 18 U.S.C. § 2511(2)(c)). If proper notice has been given that phone calls are being monitored, inmates are impliedly consenting to the recording of their phone calls by choosing to use the phones. **See** *United States v. Lucas*, 499 F.3d 769 (8th Cir. 2007) (noting an inmate impliedly consented after the jail gave each inmate a handbook stating that all outgoing telephone calls were monitored except those to attorneys, affixed placards to the inmate telephones warning that the calls were recorded, and an audio message repeated the warning before each call); *Horr*, 963 F.2d at 1124 (Inmate "was aware of the telephone monitoring policy. It was his choice to use the telephone to conduct his illegal business").

In this case, Mass was given a handbook outlining the policies and procedures when he entered Douglas County Corrections. In that handbook the telephone policy is stated, "All telephone calls, with the exception of attorney calls, are monitored and recorded. Notice of monitoring is announced to both parties at the beginning of each call" (Ex. 1 - p. 19). Further, located near each inmate telephone in the jail is a sign that reads "Calls placed from this telephone are subject to monitoring and recording" (TR. 9-11; Ex. 4). The court finds Mass had sufficient notice his phone calls were being monitored and recorded, thus he impliedly consented when he decided to use the phone. The motion to suppress in regard to the statements made from the jail house phone should be denied.

## ORDER

**IT IS ORDERED** that Mass' motion to sever (Filing No 44) be denied if the Penney post-arrest statement to law enforcement officers is not used during a joint trial, otherwise the motion to sever should be granted.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

1. Mass' motion to dismiss (Filing No. 42) be denied; and
2. Mass' motion to suppress (Filing No. 46) be granted in respect to the firearm found during the search of the residence and denied in all other respects.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 16th day of September, 2011.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.